# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4883 | **DATE** | 12/20/2002 |
| **CASE TITLE** | | James Shula vs. Gorodess et al. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. It is hereby ordered that Defendants' Motion for Summary Judgment [#22] is denied. Plaintiff's Cross-Motion for Summary Judgment [#25] is granted in part and denied in part. Status hearing is set for **1/29/03 at 9:00 a.m.** AK

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/20/2002 | |
| | | | date mailed notice | |
| FT/ *sexy* | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 DEC 20 PM 4: 03 Date/time received in central Clerk's Office | FT mailing deputy initials | |

JAMES A. SHULA,                     )
                                    )
        Plaintiff,                  )
                                    )   Case No. 01 C 4883
        v.                          )
                                    )
                                    )   Magistrate Judge
PAUL D. LAWENT, J.V.D.B. &          )   Arlander Keys
ASSOCIATES, INC., f/k/a J.D. SYMAN, )
and DENISE BUGNO,                   )
                                    )
        Defendants.                 )

DOCKETED DEC 2 3 2002

## INTRODUCTION

This matter is before the Court on Defendants' Motion for
Summary Judgment on all counts and Plaintiff's Cross-Motion for
Summary Judgment on Counts I, II, III, and V. The claims allege
violations of the Fair Debt Collection Practices Act and the
Illinois Consumer Fraud Act. For the following reasons, the
Court grants in part and denies in part the parties' respective
motions.

## BACKGROUND

James A. Shula received medical treatment from Dr. Harry M.
Goldin on January 25, 2000. (Defs.' 56.1 ¶ 1.) Dr. Goldin
subsequently billed Mr. Shula $187.87 for his services. (Defs.'
56.1 ¶ 2.) When Mr. Shula failed to pay the requested $187.87,
Dr. Goldin referred his bill to Defendant J.V.D.B. & Associates,
Inc. ("J.V.D.B."). (Defs.' 56.1 ¶ 2.)

Defendant J.V.D.B. is a collection agency and a "debt

30

collector" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). (Pl.'s 56.1 ¶ a.) Defendant Paul Lawent, an attorney, has practiced collection law full-time at J.V.D.B. since August 2000. (Pl.'s 56.1 ¶ b.) Mr. Lawent performs about ninety-nine percent of his legal work for J.V.D.B. (Pl.'s 56.1 ¶ b.) Defendant Denise Bugno is a J.V.D.B. officer and minority shareholder. (Pl.'s 56.1 ¶ c.) Ms. Bugno manages J.V.D.B's legal department, which prepares complaints and other court documents for J.V.D.B.'s collection lawyer. (Pl.'s 56.1 ¶ c.)

J.V.D.B.'s and Mr. Lawent's offices are interconnected and J.V.D.B. provides and pays for Mr. Lawent's space. (Pl.'s 56.1 ¶ q.) In addition, Mr. Lawent uses J.V.D.B.'s staff, office equipment, and supplies. (Pl.'s 56.1 ¶ q.)

On June 21, 2000, Mr. Shula received a telephone message from Mr. Ferdinand,[1] a J.V.D.B. debt collector. (Pl.'s 56.1 ¶ d.) Mr. Ferdinand informed Mr. Shula that he owed Dr. Goldin $187.87 for medical services. (Pl.'s 56.1 ¶ d.) Mr. Shula returned Mr. Ferdinand's call, told Mr. Ferdinand that he had never received a bill from Dr. Goldin or J.V.D.B., and asserted that he did not in fact owe $187.87. (Pl.'s 56.1 ¶ d.) Mr.

---

[1]    "Mr. Ferdinand" was actually a J.V.D.B. debt collector whose real name is Carlos Furman, but who used the name "Mr. Ferdinand" when making collections phone calls. (Lawent Dep. p. 75-76.) The correct spelling of Mr. Furman's last name is unknown. (Lawent Dep. p. 75-76.)

Ferdinand promised to send a copy of the bill, but Mr. Shula never received the promised copy. (Pl.'s 56.1 ¶ d.)

Six days later, on June 27, 2000, Mr. Shula received another phone call from Mr. Ferdinand. (Pl.'s 56.1 ¶ d.) Mr. Ferdinand again informed Mr. Shula that he owed Dr. Goldin $187.87 and threatened to sue Mr. Shula if he did not pay. (Pl.'s 56.1 ¶ e.) Mr. Shula reminded Mr. Ferdinand of the dispute over the bill. (Pl.'s 56.1 ¶ e.)

On August 4, 2000, Dr. Goldin authorized J.V.D.B. to select an attorney to file suit against Mr. Shula for non-payment of the $187.87 debt. (Defs.' 56.1 ¶ 3.) Before Mr. Lawent began working for J.V.D.B. in August 2000, J.V.D.B. retained another lawyer, Mr. David B. Gorodess. (Pl.'s 56.1 ¶ b.) Mr. Gorodess stopped working full-time for J.V.D.B. the first week of August 2000. (Vanko dep., at 60.) However, over the following two weeks, until Mr. Lawent could take over, Mr. Gorodess went to J.V.D.B.'s office periodically to sign complaints, letters, and forms. (Vanko Dep. at p. 59-60.) Defendants assert that on August 8, 2000, Mr. Gorodess signed a summons and complaint naming Mr. Shula as the defendant in a state court lawsuit, *Goldin v. Shula*,[2] for non-payment of $187.87. (Defs.' 56.1 ¶¶ 3, 4, 6.)

---

[2] The state court suit, *Goldin v. Shula*, No. 00M1-137906, is a matter separate from the case at bar.

Mr. Shula denies that Mr. Gorodess signed the summons and complaint on August 8, 2000. (Pl.'s Resp. to Defs.' 56.1 ¶ 4.) In his affidavit, Mr. Gorodess, who is not a party to the present action, asserted that he never signed a complaint or filed a lawsuit against Mr. Shula. (Pl.'s Resp. to Defs.' 56.1 ¶ 4.) However, Ms. Bugno claims that Mr. Gorodess came by the office and signed the summons and complaint against Mr. Shula on August 8, 2000, at "noontime," which she knows because she notarized the document on August 8, 2000, and Mr. Gorodess would typically drop by the office around noon. (Defs.' 56.1 ¶ 4, Pl.'s 56.1. ¶ y, Bugno Dep. at p. 75.) Ms. Bugno asserts that she cannot remember the exact dates and times that Mr. Gorodess came by the J.V.D.B. office to sign legal documents. (Pl.'s 56.1 ¶ y.) Ms. Bugno sometimes notarizes documents more than a day after the documents have been signed. (Pl.'s 56.1 ¶ w.) If Ms. Bugno does not notarize a signature until a later date, then the date that she puts on the notary jurat is the date she notarized the document, not the date on which the document was actually signed. (Pl.'s 56.1 ¶ w.)

To avoid litigation of the state court lawsuit, Mr. Shula mailed Dr. Goldin's office a check for $187.87.[3] (Pl.'s 56.1 ¶

---

[3]    Dr. Goldin eventually refunded Mr. Shula $152.45 of that money. (Pl.'s Resp. to Defs.' 56.1 ¶ 13.) The Court assumes that the state court suit was eventually dismissed, although the pleadings do not mention a resolution of the case.

4

g.) John Vanko, who is not a party to the instant lawsuit, is J.V.D.B.'s president and majority shareholder. (Pl.'s 56.1 ¶ a.) Defendants assert that in late August 2000, Mr. Vanko asked Mr. Lawent if Illinois law would permit a plaintiff to seek court costs in a case in which the defendant had paid the principal before judgment, and Mr. Vanko showed Mr. Lawent a sample letter demanding court costs.[4] (Defs.' 56.1 ¶¶ 14, 15.) Mr. Lawent informed Mr. Vanko that under Illinois law, he could request court costs if a defendant paid the principal before judgment. (Defs.' 56.1 ¶ 16.) Mr. Lawent also approved the wording of the sample letter. (Defs.' 56.1 ¶ 17.)

Defendants further assert that in early September 2000, a J.V.D.B. employee told Mr. Lawent that Mr. Shula had paid the principal before judgment in his case and asked Mr. Lawent to review Mr. Shula's file to determine whether J.V.D.B. could collect court costs. (Defs.' 56.1 ¶ 18.) Mr. Shula denies that Mr. Lawent made the decision to send him a letter demanding payment for J.V.D.B.'s court costs. (Pl.'s Resp. to Defs.' 56.1 ¶ 18.) Mr. Shula argues that, instead, the decision was made by

---

[4] Mr. Shula denies that Mr. Vanko consulted Mr. Lawent regarding whether J.V.D.B. could request court costs where the plaintiff had paid the principal before judgment. (Pl.'s Resp. to Defs.' 56.1 ¶ 14.) Mr. Shula argues that J.V.D.B. had been using the same type of court costs letter Mr. Shula had received since the company was incorporated in 1999 — nine months before Mr. Lawent began working for J.V.D.B. (Pl.'s Resp. to Defs.' 56.1 ¶ 14.)

5

a J.V.D.B. clerical employee. (Pl.'s Resp. to Defs.' 56.1 ¶ 18.)
The parties agree that Mr. Lawent approved the wording of a
sample letter demanding payment of court costs. (Defs.' 56.1 ¶
17.) However, Mr. Shula asserts that, while Mr. Lawent granted
J.V.D.B. general permission to use his letterhead to print and
send letters, J.V.D.B. does not consult Mr. Lawent each time it
mails such a letter. (Pl.'s Resp. to Defs.' 56.1 ¶ 18.)
Additionally, Mr. Shula asserts that Mr. Lawent does not send a
validation notice to consumers before he sues them.[5] (Pl.'s 56.1
¶ p.)

Mr. Shula subsequently received a letter printed on Mr.
Gorodess's letterhead, dated September 8, 2000, demanding that
Mr. Shula pay $52.73 for court costs. (Pl.'s 56.1 ¶ h.) The
letter stated, "You still owe the sum of $52.73. This is the
amount of court costs that we paid to the courts by our client to
institute legal action against you." (Pl.'s 56.1 ¶ j.) The
letter further stated, "This is an attempt to collect a debt.
Any information obtained will be used for that purpose." (Pl.'s
56.1 ¶ j.) Mr. Shula never signed an agreement requiring him to
pay court costs incurred in connection with the collection of any
debt owed to Dr. Goldin. (Pl.'s 56.1 ¶ s.) Defendants assert
that the letter was mistakenly printed on Mr. Gorodess's

---

[5]     Defendants failed to deny this statement, therefore the
Court deems it admitted. *See* N.D. Ill. Loc. R. 56.1(b)(3)(B).

letterhead instead of on Mr. Lawent's letterhead because of a clerical error. (Defs.' 56.1 ¶¶ 21, 22.) Mr. Shula argues that neither Mr. Vanko nor Mr. Lawent knew why the letter was printed on Mr. Gorodess's letterhead. (Pl.'s Resp. to Def. 56.1 ¶ 22.) Mr. Gorodess was no longer working for J.V.D.B. at the time the company sent Mr. Shula the letter. (Pl.'s 56.1 ¶ k.) Neither J.V.D.B. nor Mr. Lawent had procedures in place to prevent the letter from being sent on Mr. Gorodess's letterhead after he stopped working for J.V.D.B.[6] (Pl.'s 56.1 ¶ l.)

On June 26, 2001, Mr. Shula filed the instant lawsuit against Mr. Gorodess, alleging violations of the FDCPA. (Defs.' 56.1 ¶ 25.) On September 7, 2001, Mr. Shula filed his Amended Complaint and added J.V.D.B. as a defendant. (Defs.' 56.1 ¶ 26.) On March 28, 2002, Mr. Shula filed his Second Amended Complaint, substituting Mr. Lawent for Mr. Gorodess and adding Defendant Ms. Bugno. (Defs.' 56.1 ¶ 27.) On July 22, 2002, Mr. Shula's counsel informed Defendants that he was withdrawing Count IV from his complaint.[7] (Defs.' 56.1 ¶ 28.) Mr. Shula filed a Cross-Motion for Summary Judgment on September 27, 2002.

---

[6]     Mr. Shula asserts that no procedures were in place to prevent this mistake. (Pl.'s 56.1 ¶ 1.) Defendants failed to deny this allegation. (Defs.' Resp. Pl.'s 56.1.)

[7]     Count IV alleged that Mr. Lawent furnished a form attorney collection letter to J.V.D.B. that would create the false impression that an attorney was attempting to collect a debt from the recipient. (Sec. Am. Compl., Count IV.)

In Count I, Mr. Shula alleges that J.V.D.B. and Mr. Lawent violated Sections 1692f(1) and 1692e[8] of the FDCPA, because the court costs letter demanded a payment not expressly authorized by agreement or law. (Sec. Am. Compl., at 3.) Count II charges Mr. Lawent with violating § 1692g(a) of the FDCPA, because the court costs letter did not include a validation notice. (Sec. Am. Compl., at 4.) Count III, against J.V.D.B., alleges that the court costs letter, sent on Mr. Gorodess's letterhead, constituted a deceptive or misleading representation in violation of § 1692e of the FDCPA. (Sec. Am. Compl., at 4.) In Count V, Mr. Shula charges that J.V.D.B. and Mr. Lawent violated Sections 1692e(3) and 1692e(9) of the FDCPA by falsely representing that the court costs letter was from an attorney. (Sec. Am. Compl., at 5.) Count VI, against J.V.D.B. and Ms. Bugno, alleges a violation of the Illinois Consumer Fraud Act related to whether

---

[8]  The Court must address a procedural issue at this juncture. Mr. Shula did not specify a § 1692e violation in his Second Amended Complaint; he raised this allegation for the first time in his Cross Motion for Summary Judgment. (Pl.'s Cross Mot. Summ. J., at 9.) Inexplicably, Defendants' Response to Plaintiff's Cross Motion for Summary Judgment contains no objection to this error in pleading. Under Rule 15(b) of the Federal Rules of Civil Procedure, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." By not acknowledging or objecting to the error, Defendants have impliedly consented to consideration of this allegation. Thus, the Court will address the § 1692e allegation in its consideration of Mr. Shula's summary judgment motion; additionally, the Court grants Mr. Shula leave to amend his Complaint to include this allegation.

8

Mr. Gorodess signed the complaint against Mr. Shula. (Sec. Am. Compl., at 6.) Finally, in Count VII, Mr. Shula alleges that J.V.D.B. violated § 1692e of the FDCPA by falsely representing that Mr. Gorodess had signed a complaint against Mr. Shula. (Sec. Am. Compl., at 6.)

On June 21, 2002, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Pursuant to Local Rule 73.1, this case was reassigned from United States District Court Judge Wayne R. Andersen to this Court.

## DISCUSSION

### I.   Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact . . . and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Initially, the moving party bears the burden of showing that the record contains no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The governing substantive law establishes which facts are material. *Anderson*, 477 U.S. at 248.

The non-moving party must present more than a "metaphysical doubt as to the material facts" to survive summary judgment.

9

*Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). Additionally, "mere conclusory" allegations are not enough. *Nowak v. St. Rita High School*, 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party will not survive summary judgment if it cannot present sufficient evidence to support each element of its case on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Courts do not make "credibility determinations nor choose between competing inferences" at the summary judgment stage. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993). Further, the court must view the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

## II.  **Defendants' Motion for Summary Judgment**

### A.  **Statute of Limitations**

Defendants contend that Count VI, against Ms. Bugno, Counts V, VI, and VII, against J.V.D.B., and Counts I, II, and V, against Mr. Lawent, are not actionable because Mr. Shula failed to bring suit within the applicable statute of limitations period. (Defs.' Mot. Summ. J., at 7.) In addition, Defendants argue that, because the statute of limitations defense is obvious, they are entitled to a finding that Mr. Shula acted in bad faith for the purposes of harassment. (Defs.' Mot. Summ. J., at 8.)

#### 1.  **Illinois Consumer Fraud Act**

10

Defendants argue that the Court must grant summary judgment in their favor because Mr. Shula failed to file a complaint containing these allegations before the FDCPA one-year statute of limitations had run.[9] (Defs.' Mem. Supp. Summ. J., at 7-8.) A plaintiff must file a claim under the FDCPA in an appropriate United States district court, or any other court of competent jurisdiction, within one year from the date on which the alleged violation occurred. 15 U.S.C. § 1692k(d). Further, the Illinois Consumer Fraud Act provides a three-year statute of limitations period for the filing of similar claims under the state law act. 815 ILL. COMP. STAT. 505/10a(e) (2002).

The charge stemming from Mr. Shula's state law claim in Count VI arises out of the August 8, 2000, notarization of the complaint against Mr. Shula. Mr. Shula first filed a complaint against J.V.D.B., alleging a violation of the Illinois Consumer Fraud Act, on September 7, 2001, and against Ms. Bugno on March 28, 2002. Thus, Mr. Shula properly filed suit within the three-year statute of limitations period required by the Illinois Consumer Fraud Act.

## 2. **Fair Debt Collection Practices Act**

---

[9] Defendants failed to distinguish the statute of limitations for FDCPA claims from the statute of limitations under the Illinois Consumer Fraud Act. (Defs.' Mem. Supp. Summ. J. at 7-8.) However, as Count VI alleges violations of the Illinois statute, the Court must consider the statute of limitations period under the state law.

However, the Court can not as easily dispense with the statute of limitations defense for the FDCPA claims. Mr. Shula argues that Defendants waived their statute of limitations defense when they failed to raise it as an affirmative defense in their Answer. (Pl.'s Resp. to Defs.' Mot. Summ. J., at 3.) The Federal Rules of Civil Procedure require that a defendant explicitly plead all affirmative defenses, including statute of limitations, or waive the right to rely on such arguments.[10] FED. R. CIV. P. 8(c). The purpose of this rule is to avoid surprise and undue prejudice to the plaintiff by providing the plaintiff with notice and the opportunity to demonstrate why the defense should not prevail. *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).

Nonetheless, courts have the discretion to allow a defendant to amend its answer and assert an affirmative defense not raised initially. FED. R. CIV. P. 15(a). So long as a plaintiff has adequate notice of the defense and is given an opportunity to respond, failure to plead an affirmative defense can be harmless. *Venters v. City of Delphi*, 123 F.3d 956, 968 (7th Cir. 1997), *citing Blaney v. United States*, 34 F.3d 509, 512-13 & n.3 (7th Cir. 1994) (collecting cases). On its own motion, the Court may

---

[10]     Illinois state law similarly requires defendants to explicitly plead all affirmative defenses, but as Mr. Shula filed Count VI within the three-year statute of limitations period, the issue is moot. *See,* 735 ILL. COMP. STAT. 5/2-613(d) (2002).

order such an amendment, provided that the plaintiff is not unduly surprised or prejudiced. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987). In the case at bar, Defendants have not requested leave to amend the Answer. However, the Court finds it unnecessary to make such a motion here, where Mr. Shula has provided an adequate and convincing response to a statute of limitations affirmative defense.

### i. <u>Allegations relate back to original complaint</u>

Mr. Shula contends that the FDCPA allegations relate back to the original complaint, filed June 26, 2001, and that the statute of limitations, therefore, does not bar litigation of them. (Pl.'s Resp. to Defs.' Mot. Summ. J., at 4.) Under Federal Rule of Civil Procedure 15(c), "an amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." In general, relation back is permitted if an amended complaint asserts a new claim based on the same core set of facts, but involving a different substantive theory than that advanced in the initial pleading. *Burlarz v. Prudential Ins. Co. of America*, 93 F.3d 372, 379 (1996). Thus, a claim that otherwise would be barred by the statute of limitations relates back to the date of the initial pleading if

the claim stems from the same "conduct, transaction, or occurrence" alleged in the initial pleading. *Id.*

Mr. Shula's initial complaint in this suit alleged violations of the FDCPA by the filing of the state court suit against him, (Compl. at ¶¶ 7, 8, 10), and by sending the September 8, 2000, court costs letter to him. (Compl. at ¶¶ 9, 13.) Further, Mr. Shula initially raised the Count VII allegation concerning the August 8, 2000 notarization of the state court complaint and the Count V allegation concerning the court costs letter in his Second Amended Complaint, filed March 28, 2002, placing the allegations outside the one-year statute of limitations. However, the Court finds that Counts V and VII, against J.V.D.B., which were added in the Second Amended Complaint, stem from the same "conduct, transaction, or occurrence," or the same "core set of facts" as the violations alleged in the initial Complaint.[11] Counts V and VII against J.V.D.B. relate back to the initial Complaint, which was filed within the one-year FDCPA statute of limitations period. Thus, such allegations are not time-barred.

### ii. **Parties relate back to original complaint**

Mr. Shula further contends that the substitution of Mr.

---

[11]    Defendants fail to address Mr. Shula's "relation back" defense in the Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment. (Defs.' Reply to Mot. Summ. J., at 3-5.)

Lawent for Mr. Gorodess in Counts I, II, and V of the Second
Amended Complaint also relates back to the initial Complaint.
(Pl.'s Resp. to Defs.' Mot. Summ. J., at 4-6.)  Under Federal
Rule of Civil Procedure 15(c)(3), an amendment changing the party
or the name of the party against whom a claim is asserted relates
back to the date of the initial pleading if the claim alleged in
the amended pleading meets two main requirements.  FED. R. CIV.
PRO. 15(c)(3).  First, the claim in the amended pleading must
arise from the same "conduct, transaction, or occurrence" set
forth in the initial pleading.  *Id.*  Second, within the period
provided for service of summons and complaint, the party to be
added "(A) has received such notice of the institution of the
action that the party will not be prejudiced in maintaining a
defense on the merits, and (B) knew or should have known that,
but for the mistake concerning the identity of the proper party,
the action would have been brought against the party."  *Id.*

Mr. Shula asserts that he initially named Mr. Gorodess as a
Defendant because Defendants printed the court costs letter on
Mr. Gorodess's stationery, leading Mr. Shula to believe that Mr.
Gorodess sent the letter.  (Pl.'s Resp. to Defs.' Mot. Summ. J.,
at 4.)  Each of the claims against Mr. Lawent arise from the
court costs letter.   Only Count V was not alleged in the initial
Complaint, however, the Court has found that the allegation in
Count V arises from the same conduct, transaction, or occurrence

set forth in the initial pleading.

In addition, Mr. Shula filed his initial Complaint on June 26, 2001, and Mr. Lawent filed an answer on J.V.D.B.'s behalf on October 1, 2001. Thus, Mr. Lawent received notice of the action within the 120 days allotted for service of summons and complaint. Therefore, Mr. Lawent was not prejudiced in maintaining a defense on the merits, because he began defending J.V.D.B. in this action before October 1, 2001. Finally, Mr. Lawent knew or should have known that he would have been named instead of Mr. Gorodess, but for a mistake in identity, because Mr. Lawent knew that Mr. Gorodess stopped working for J.V.D.B. in August 2000, when he took over Mr. Gorodess's position. The court costs letter was dated September 8, 2000, several weeks after Mr. Gorodess left J.V.D.B. and Mr. Lawent took over his responsibilities.

Thus, the substitution of Mr. Lawent for Mr. Gorodess in the Second Amended Complaint relates back to the initial Complaint and, therefore, falls within the statute of limitations period. Therefore, neither Mr. Shula's federal or state claims are time barred. The Court hereby also summarily denies Defendants' request for a finding of bad faith and harassment against Mr. Shula.

### B.  **Definition of Debt**

Defendants next ask the Court to grant summary judgment on

each of the FDCPA claims against J.V.D.B. and Mr. Lawent relating to the court costs letter (i.e. Counts I, II, III, and V). Additionally, Defendants claim that Mr. Shula could not have expected to succeed on these claims, and therefore they are entitled to a finding that Mr. Shula acted in bad faith for the purposes of harassing Defendants.

Defendants argue that the FDCPA regulates only the collection of consumer debts, that the court costs letter is not an attempt to collect a consumer debt, and thus, that Mr. Shula's FDCPA claims based on the court costs letter must fail. (Defs.' Mot. Summ. J., at 9-10.) Mr. Shula, in turn, maintains that the claims relating to the court costs letter arise in connection with the collection of a debt, as defined by the FDCPA, and that, therefore, summary judgment is inappropriate. (Pl.'s Resp. to Defs.' Mot. Summ. J., at 6-9.) The parties do not dispute any of the material facts, therefore the Court must determine whether judgment is warranted under law.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been

17

reduced to judgment." 15 U.S.C. § 1692a(5). At a minimum, the transaction must involve a business dealing or other consensual consumer transaction. *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997). The Seventh Circuit has held that the FDCPA's definition of debt does not require an offer or extension of credit. *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997). To qualify as debt, an amount owed must relate to the underlying consumer transaction. *Id.* at 481.

The court in *Person v. Stupar, Schuster & Cooper, S.C.*, 136 F. Supp. 2d 957 (E.D. Wis. 2001), relied on the *Newman* definition of debt in deciding whether attorney fees fall under the auspices of the FDCPA. In *Person*, the plaintiff filed suit under the FDCPA after receiving a letter stating that he owed a specific sum, plus attorney fees, to his condominium association. *Id.* at 959. The plaintiff argued that he did not owe the said attorney fees and that the defendant debt collectors had violated the FDCPA by using unfair and unconscionable means to collect the condominium association debt. *Id.* at 960. The defendant debt collectors countered that their request for attorney fees could not have violated the FDCPA, because attorney fees do not constitute debt under the statute. *Id.* at 961. The defendants claimed that the plaintiff had not become obligated to pay the attorney fees as a result of purchasing his condominium; they

contended that the plaintiff became obligated to pay the attorney fees only after he failed to pay the amount he owed the condominium association. *Id.* In other words, the defendants argued that there was no "transactional nexus" between the purchase of the condominium and the attorney fees demanded. *Id.*

The *Person* court disagreed and held that the attorney fees constituted "debt" under the FDCPA, because the attorney fees related to the underlying consumer transaction – the purchase of the condominium. *Id.* The court found that, by purchasing his condominium, the plaintiff became subject to late fees and other charges in the event that he did not timely pay all amounts owed on the condominium. *Id.*

The *Person* defendants' arguments parallel Defendants' contentions in the instant case. Like the *Person* defendants, Defendants here have argued that the requested court costs are not subject to the FDCPA, because court costs do not represent consumer debt. Defendants contend that Mr. Shula was not obligated to pay the court costs as a result of consulting a doctor – the consumer transaction in question. Instead, Defendants argue that Mr. Shula was only obligated to pay the court costs after he failed to pay the amount he owed Dr. Goldin. In essence, Defendants are arguing that there is no "transactional nexus" between the purchase of medical services and the court costs demanded. Yet, following the *Person* court's

analysis, Mr. Shula allegedly became subject to court costs in the event that he did not timely pay the costs owed for his medical services.

Relying on the *Person* court's reasoning, this Court finds that the court costs relate to the underlying consumer transaction – the purchase of medical services.[12] Thus, Defendants' court costs represent a debt pursuant to the FDCPA.[13] Therefore, the Court denies Defendants' motion for summary

---

[12] Defendants point to another case, *Hicken v. Arnold, Andersen & Dove, P.L.L.P.*, 137 F. Supp. 2d 1141 (D. Minn. 2001), to support their argument that court costs do not qualify as a consumer transaction. (Defs.' Mot. Summ. J., at 9.) The court in *Hicken* held that a law firm's efforts to enforce a property settlement obligation did not fall under the authority of the FDCPA, because the efforts did not arise from a consumer transaction. *Id.* at 1143. However, *Hicken* is not analogous to the case at bar, because the instant case involves an underlying consumer transaction and *Hicken* involved only a negotiated martial agreement. *Id.*

[13] Moreover, Mr. Shula points out that the FDCPA specifically prohibits certain attempts to collect charges incidental to an underlying consumer debt. (Pl.'s Resp. to Defs.' Mot. Summ. J., at 8.) The FDCPA forbids the use of "unfair or unconscionable means to collect or attempt to collect any debt," and states that a collection agency would violate its provisions through "the collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Here, even if the court costs were not "debt" as defined by the FDCPA, they would still constitute a charge incidental to the principal obligation. The FDCPA would, therefore, bar the use of unfair or unconscionable means to collect the court costs. Thus, whether or not the Court determined that the court costs letter constituted debt under the FDCPA, Defendants' actions regarding the court costs letter violated the FDCPA.

judgment on Counts I, II, III, and V. Because the court denies Defendants' summary judgment motion, it also denies Defendant's request for a finding of bad faith and harassment.

## C.  The Signing of the Complaint

Defendants' final request for summary judgment, on Counts VI and VII,  rests on the question of whether Mr. Gorodess signed the summons and complaint against Mr. Shula on August 10, 2000. (Defs.' Mot. Summ. J. at 12.) Defendants contend that the question is strictly one of fact, and that Mr. Vanko's and Ms. Bugno's affidavits clearly demonstrate that Mr. Gorodess signed the documents on August 10, 2000.  (Defs.' Mot. Summ. J., at 12.)

Ms. Bugno's affidavit directly conflicts with Mr. Gorodess's affidavit.  Mr. Gorodess stated that he never signed the summons, never signed the complaint, and never filed a lawsuit against Mr. Shula.  However, Ms. Bugno affied that Mr. Gorodess did sign the documents.  This Court concludes that a genuine issue of material fact exists as to whether Mr. Gorodess signed the aforementioned documents.  Further, a reasonable jury could return a verdict for Mr. Shula, the nonmoving party.  Therefore, summary judgment is denied.

## III. Plaintiff's Cross-Motion for Summary Judgment

### I.  Recovery of Court Costs

Mr. Shula filed a Cross-Motion for Summary Judgment on Counts I, II, III and V.  The Court will first address Count I,

alleging that Defendants' demand for court costs violated Sections 1692f(1) and 1692e of the FDCPA. Mr. Shula argues that he did not owe Defendants $52.73 for court costs, therefore Defendants' court costs letter violated the FDCPA. (Pl.'s Cross Mot. Summ. J., at 9-11.) Defendants contend that they did not violate the FDCPA because Illinois law provides for the collection of court costs by a collection agency when a debtor pays the principal on the alleged debt before judgment is issued in a lawsuit. (Def's Mot. Summ. J., at 9.) No genuine issue of material fact exists in this case, therefore the Court will consider whether judgment is warranted under law.

The FDCPA prohibits a debt collector from collecting or attempting to collect any amount not "expressly authorized by agreement or permitted by law." 15 U.S.C. § 1692f(1). Defendants admit that Mr. Shula did not enter into any agreement requiring him to pay court costs and that no judgment against Mr. Shula exists awarding court costs to Defendants. (Defs.' Res. to Pl.'s 56.1 ¶ s.) Thus, Mr. Shula argues that the letter Defendants sent him stating that he "owes" $52.73 in court costs is not expressly authorized by agreement or permitted by law. (Pl.'s Cross Mot. Summ. J., at 10.) Defendants contend that while no agreement exists requiring Mr. Shula to pay court costs, the costs are permitted by law. (Defs.' Resp. to Pl.'s Cross Mot. Summ. J., at 7.)

Defendants refer the Court to Illinois state law, which provides that "[c]ourt costs expended by the agency or the creditor for filing a complaint are recoverable by the agency or the creditor if the principal on the debt is paid before the judgment is issued." 225 ILL. COMP. STAT. 425/8a-1(b) (2002). Mr. Shula paid the principal on the debt before judgment was issued. The question is whether the Illinois statute "permitted" the collection of court costs.

While the Seventh Circuit and the Northern District of Illinois have not yet considered this question, other courts have held that "permitted by law" is different from "not prohibited by law." *National Life Ins. Co. & Subsidiaries v. Comm'r*, 103 F.3d 5, 8 (2d Cir. 1996); *West v. Costen*, 558 F. Supp. 564, 582 (D.C. Va. 1983). Permission requires an affirmative authorization, not just indulgent silence. *West*, 558 F.Supp. at 582.

At common law, a successful litigant was not entitled to recover from his opponent the costs and expenses of the litigation. *Galowich v. Beech Aircraft Corp.*, 441 N.E.2d 318, 320 (Ill. 1982). In Illinois, the allowance and recovery of costs is, therefore, entirely dependent on statutory authorization. *Id.* Only those items designated by statute can be taxed as costs. *Id.* While the power to impose costs must ultimately be found in statute, the legislature may grant the power in general terms to the courts, which may make rules or

orders under which the costs may be taxed and imposed. *Id.*

In the instant case, the Illinois statute clearly and affirmatively states that court costs are "recoverable" where the principal debt is settled before judgment. However, the statute does not necessarily entitle a collection agency to court costs *every* time a collection agency *can* collect the principal debt from a defendant before judgment. Further, recovery of costs in Illinois depends on the existence of a statute authorizing such recovery. Here, Defendants can point to a statute authorizing the *possibility* of collecting court costs. However, the Illinois statute does not make recovery of court costs automatic every time the statutory requirements are met.

In Illinois, where statutes make court costs "recoverable," parties must still request a court order imposing such costs if they want to actually collect.[14] *See Vill. of Franklin Park v. Aragon Mgmt., Inc.*, 699 N.E.2d 1053, 1054 (1st Dist. 1998). In *Village of Franklin Park,* an Illinois appellate court confronted the issue of whether an Illinois statute governing court costs authorized the collection of costs related to expert witness fees and court reporting fees. *Id.* at 1054. The statute in *Village*

---

[14]     This is especially obvious if the statute authorizing an award of costs does not specify which costs are awardable. *Dominguez v. St. John's Hosp.*, 632 N.E.2d 16, 22 (1st Dist. 1993) (holding that a court costs statute does not grant automatic recovery due to "its failure to specify precisely what constitutes costs.")

*Park* made costs that were incurred by a municipality for the demolition of a building, including court costs, "recoverable" by the building's owner. *Id.* However, the municipality still had to petition the court for recovery of such costs. *Id.* In fact, the trial court denied the municipality's petition for expert witness fees and court reporting fees, and the appellate court affirmed the lower court's decision. *Id.*

Therefore, the Court concludes that Defendants were not "permitted by law" to demand court costs from Mr. Shula. Further, because no agreement existed authorizing the imposition of court costs, Defendants violated § 1692f(1) of the FDCPA when they sent Mr. Shula the court costs letter.

Defendants also violated § 1692e when they sent Mr. Shula the court costs letter demanding money that he did not owe. Section 1692e prohibits debt collectors from making any "false, deceptive, or misleading" representation to collect a debt. 15 U.S.C. § 1692e. In evaluating whether a debt collection letter is "false, misleading, or deceptive," the letter must be viewed through the eyes of the unsophisticated consumer. *Jang v. A.M. Miller & Assoc.*, 122 F.3d 480, 483 (7th Cir. 1997). Applying the reasoning above, the court costs letter that Defendants sent Mr. Shula was false under any standard, but especially when viewed through the eyes of an unsophisticated consumer. Without a judgment or agreement, Mr. Shula simply did not "owe" Defendants

$52.73.

There is no genuine issue of material fact here, and judgment is warranted under law in relation to both Mr. Shula's § 1692f(1) and his § 1692e claims. Therefore, the Court grants Mr. Shula's cross motion for summary judgment on Count I.

### B. **Validation Notice**

Mr. Shula also moves for summary judgment on Count II, alleging that Mr. Lawent failed to provide him a written validation notice within five days of Mr. Lawent's initial communication with him, as required by § 1692g(a) of the FDCPA. Defendants argue that a validation notice was not necessary, because the court costs letter did not fall under the authority of the FDCPA.

Section 1692g(a) of the FDCPA requires that a debt collector send the debtor a written notice, instructing him that, if he disputes the debt and notifies the debt collector of the dispute, "the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer." 15 U.S.C. 1692g(a).

Because the Court previously ruled that court costs in this case constitute a "debt" under the FDCPA, Mr. Lawent was required to include a statutory validation notice in his initial communication with Mr. Shula (i.e., the court costs letter). Mr.

26

Lawent has admitted that he does not send the notice before he files suit, and the court costs letter sent to Mr. Shula clearly lacks the required notice. (Ex. One.)[15] Therefore, Mr. Lawent violated § 1692g(a) of the FDCPA, and Mr. Shula is entitled to judgment as a matter of law. The Court, therefore, grants Mr. Shula's request for summary judgment on Count II.

### C.  Origin of the Court Costs Letter

Mr. Shula's third request for summary judgment involves the erroneous placement of the court costs letter on Mr. Gorodess's letterhead after Mr. Gorodess had stopped working for J.V.D.B. and Mr. Lawent had taken over his responsibilities. Mr. Shula argues that this error constitutes a violation of § 1692e of the FDCPA. (Pl.'s Cross Mot. Summ. J., at 11-12.) Inexplicably, Defendants failed to directly address this charge in their Response to Plaintiff's Cross Motion for Summary Judgment. However, in Defendants' Response to Plaintiff's Motion for Summary Judgment on Count V, Defendants contend that the placement of the letter on Mr. Gorodess's letterhead instead of on Mr. Lawent's was merely a clerical error. (Defs.' Resp. to Pl.'s Cross Mot. Summ. J., at 7.)

To determine whether a collection letter violates § 1692e, courts employ an objective standard based on the "unsophisticated

---

[15]     The court costs letter submitted to the Court is labeled as both "Exhibit One" and "Exhibit A." The Court adopts the label "Exhibit One."

consumer." *Jang*, 122 F.3d at 483. The sixteen subsections of § 1692e set forth a nonexhaustive list of prohibited practices that fall within the FDCPA's scope, including "the use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). The FDCPA also includes the following provision:

> [a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

15. U.S.C. § 1692k(c). However, § 1692k(c) is an affirmative defense, and therefore, it must be pleaded in Defendants' Answer. *Jenkins v. Heintz*, 124 F.3d 824, 835 (7th Cir. 1997); FED. R. CIV. P. 8(c). Defendants here failed to include a bona fide error defense in their Answer, and Defendants have similarly failed to request leave to amend the pleadings. Further, the Court declines to, *sua sponte*, order such an amendment, as Defendants admitted that they had no procedures in place to prevent such an error.[16]

Nonetheless, the absence of a bona fide error does not necessarily make Defendants liable in this case. Rather, the Court finds this situation analogous to the use of an alias by a

---

[16] As mentioned earlier, because Defendants failed to deny that no procedures were in place to prevent an error, Defendants effectively admitted such. *See supra*, n. 5.

debt collector in *Lewis v. ABC Bus. Servs., Inc.*, 135 F.3d 389 (6th Cir. 1998). In *Lewis*, the plaintiff received a debt collection letter from the defendant indicating that he should contact "M. Hall" to pay his debt. *Id.* at 396. No such person existed at the defendant debt collection agency, nor was the alias assigned to any individual working at the agency. *Id.* The *Lewis* court found that the plaintiff could show no prejudice or harm suffered as a result of the use of the alias. *Id.* at 401, citing *Johnson v. NCB Collection Serv.s*, 799 F. Supp. 1298 (D.Conn. 1992) (holding that, where an alias was assigned to a specific person, the plaintiff had suffered no harm or prejudice as a result). Thus, the court denied the plaintiff's motion for summary judgment as to a violation of § 1692e(10) of the FDCPA. *Lewis*, 135 F.3d at 401.

In the instant case, Mr. Shula has similarly failed to demonstrate any prejudice or harm suffered as a result of the erroneous substitution of Mr. Gorodess's letterhead for Mr. Lawent's. Therefore, the Court denies Mr. Shula's motion for summary judgment on Count III.

### D. **Communication from an Attorney**

Mr. Shula's final request for summary judgment rests on § 1692e of the FDCPA, which prohibits debt collectors from falsely representing or implying that any communication is from an attorney and using any written communication that creates a

false impression as to its source.[17] (Pl.'s Mot. Summ. J., at 12.) Mr. Shula contends that, by sending the court costs letter on Mr. Gorodess's letterhead, J.V.D.B. and Mr. Lawent created a false, deceptive, and misleading impression that the letter was actually "from an attorney." (Pl.'s Cross Mot. Summ. J., at 12.) Defendants maintain that the letter was from an attorney, Mr. Lawent. (Defs.' Resp. to Pl.'s Cross Mot. Summ. J., at 7.)

An attorney sending collection letters must be "directly and personally involved" in the mailing of the letters to comply with the FDCPA. *Avila v. Rubin*, 84 F.3d 222, 228 (7th Cir. 1996). The requirement of direct and personal involvement is necessary because a debt collection letter on an attorney's letterhead conveys authority. *Id.* at 229. A letter from an attorney implies that the attorney "has reached a considered, professional

---

[17] The relevant portions of § 1692e provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the foregoing, the following conduct is a violation of this section:
> . . .
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
> . . .
> (9) The use or distribution of any written communication . . . which creates a false impression as to its source, authorization, or approval.

15 U.S.C. § 1692e.

judgment that the debtor is delinquent and is a candidate for legal action." *Id.* If a collection agency takes advantage of the authority associated with attorneys, the collector should at least ensure that an attorney is actually professionally involved in the debtor's file. *Id.*

In *Avila*, the plaintiff received a series of mass-produced collection letters printed on the letterhead of a law office and boasting the mechanically-reproduced signature of an attorney. *Id.* at 225. The attorney involved reviewed and approved the general form letter, but did not personally prepare, sign, or review any of the letters sent to the plaintiff. *Id.* A "legal assistant collector" actually produced the letter, using training materials developed by the attorney and the collector's own "skill, judgment, and training." *Id.* The court determined that the attorney had no real involvement in the mailing of the letter to the plaintiff, and that, therefore the attorney and collection agency had violated the FDCPA. *Id.* at 228, 230. The court based its holding on the following factors: 1) the attorney had a "cozy" relationship with the collection agency, 2) the attorney was not directly involved in deciding when or to whom a collection letter should be sent, 3) no real attorney exercised true "judgment," 4) the attorney failed to review the debtor's file, 5) the attorney failed to determine when particular letters should be sent or to approve their sending based on others'

31

recommendations, and 6) the attorney failed to see the particular letters or to learn the identities of the debtors before the letters were sent. *Id.* at 228-29.

To determine whether Defendants also violated the FDCPA by sending the court costs letter on an attorney's letterhead, this Court will apply the *Avila* test. First, the relationship between Mr. Lawent and J.V.D.B. is uncontested. J.V.D.B. maintains Mr. Lawent on a permanent retainer and Mr. Lawent performs ninety-nine percent of his work for J.V.D.B. J.V.D.B.'s and Mr. Lawent's offices are interconnected, and J.V.D.B. provides and pays for Mr. Lawent's space. In addition, Mr. Lawent uses J.V.D.B.'s staff, office equipment, and supplies. Defendants argue that the structure of the offices of J.V.D.B. and Mr. Lawent is irrelevant, but the Court disagrees. Based on the above information, the relationship between the two can easily be described as "cozy."

Second, while the parties agree that Mr. Lawent approved the wording of a sample letter for J.V.D.B. to use to collect court costs, they disagree as to whether J.V.D.B. consulted Mr. Lawent before sending Mr. Shula such a letter. The parties disagree as to whether an attorney determined whether and when the letter should be sent, or whether another J.V.D.B. employee made such decisions. Because the resolution of this controversy could influence the Court's analysis of each of the remaining elements

in the *Avila* test, the Court must decide whether the controversy presents a genuine issue of material fact.

Mr. Lawent affied that he reviewed Mr. Shula's file and informed a J.V.D.B. employee that a collection letter could be mailed to Mr. Shula. However, Mr. Lawent's affidavit contradicts Mr. Vanko's deposition and perhaps Mr. Lawent's own deposition,[18] but it also serves to present more than a "metaphysical doubt as to the material facts." The Court cannot make a credibility determination at the summary judgment phase, therefore, it finds that a genuine issue of material fact exists as to Mr. Lawent's involvement in the court costs letter. Thus, the Court denies Mr. Shula's motion for summary judgment on Count V.

### ORDER

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment on Counts I and II be, and the same hereby are, **GRANTED,** and Counts III and V be, and the same hereby are, **DENIED.**

DATED: December 20, 2002          ENTER:

ARLANDER KEYS
United States Magistrate Judge

---

[18] Mr. Lawent's deposition includes testimony which indicates that he may not have reviewed the court costs letter before it was sent to Mr. Shula. (Lawent Dep. at p. 150-151.)