# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4883 | **DATE** | 6/4/2004 |
| **CASE TITLE** | Shula vs. Lawent et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Memorandum Opinion and Order entered.  Plaintiff's Petition for Attorney's Fees and Expenses [#51] is granted, as modified in this Opinion.  Plaintiff is awarded $32,015.00 in fees and $150.00 in expenses  from Defendants, for a total award of $32,165.00. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices **2**

JUN 07 2004
date docketed

6/4/2004
date mailed notice

**Document Number**

**64**

FT/ *peey*   courtroom deputy's initials

2004 JUN -4  PM 3: 41

U.S. DISTRICT COURT
CLERK

Date/time received in central Clerk's Office

FILED

FT
mailing deputy initials

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED

JUN 0 7 2004

JAMES A. SHULA,                          )
                                         )
                    Plaintiff,           )      No. 01 C 4883
                                         )
          v.                             )
                                         )      Magistrate Judge
PAUL D. LAWENT, and J.V.D.B. &           )      Arlander Keys
ASSOCIATES, INC.,                        )
                                         )
                    Defendants.          )

## MEMORANDUM OPINION AND ORDER

James Shula sued Paul Lawent, J.V.D.B. & Associates, Inc.,
and Denise Bugno, for violations of the Fair Debt Collection
Practices Act ("FDCPA"), and won. The Court entered summary
judgment in Mr. Shula's favor on December 20, 2002, awarding him
statutory damages under the FDCPA of $1,000, plus attorney's fees
and costs. The case is now before the Court on Mr. Shula's
petition for an award of attorney's fees and costs. For the
reasons explained below, the petition is granted, as modified in
this opinion.

### BACKGROUND

In this case, the parties have litigated for almost three
years over claims worth just over $1,000. The Court's previous
opinion explains the factual background of this case in detail,
see *Shula v. Lawent*, No. 01 C 4883, 2002 WL 31870157 at *1-3
(N.D. Ill. Dec. 23, 2002). But to summarize briefly, defendant
J.V.D.B. & Associates, Inc., a collection agency, called James

Shula twice about a bill Mr. Shula allegedly owed to Dr. Harry Goldin, who had previously treated him. Mr. Shula disputed the debt. Nevertheless, a couple of months later, J.V.D.B. sued Mr. Shula, on behalf of Dr. Goldin, in state court. Mr. Shula, not wanting to hassle with the lawsuit, paid the bill to Dr. Goldin (most of which the doctor later returned, suggesting that Mr. Shula was actually right to dispute the debt in the first instance). About a month later, J.V.D.B. wrote to Mr. Shula, demanding that he pay $52.73 in court costs. Mr. Shula didn't pay; instead, he retained the law firm of Beeler, Schad & Diamond, P.C., and he sued J.V.D.B., as well as Paul Lawent (J.V.D.B.'s attorney) and Denise Bugno (a principal in the company and the person who managed its legal department). Mr. Shula alleged that J.V.D.B. and Lawent violated various sections of the Fair Debt Collection Practices Act (Counts 1, 2, 3, 4, 5, and 7), and that J.V.D.B. and Ms. Bugno violated the Illinois Consumer Fraud Act (Count 6).

The defendants moved for summary judgment on all of Mr. Shula's claims, arguing that Counts 1, 2, 4, 5, 6, and 7 were barred by the applicable statutes of limitation, and that the facts alleged in Counts 1, 2, 3, 5, 6, and 7 did not amount to violations of the FDCPA. Mr. Shula filed a cross-motion for summary judgment on Counts 1, 2, 3, and 5. In a memorandum opinion and order issued December 23, 2002, the Court granted

2

summary judgment in favor of Mr. Shula on Counts 1 and 2, which alleged, respectively, that J.V.D.B. and Mr. Lawent violated the FDCPA when they sent the court costs letter demanding a payment not expressly authorized by agreement or law, and that Mr. Lawent violated the FDCPA when he failed to include a validation notice in the letter. *Shula*, 2002 WL 31870157, at *8-11. The Court otherwise denied the motions. *Id.* at *4-8, *11-13. Shortly thereafter, the parties reached an agreement with respect to the remaining counts, and the Court dismissed them with prejudice. The defendants then appealed the Court's summary judgment ruling, and the Seventh Circuit affirmed. *See Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004). In doing so, the Court noted that the FDCPA violations disclosed in the record were "blatant, and reflect very poorly upon attorney Lawent's professionalism." *Id.* at 491.

While the appeal was pending, Mr. Shula filed a petition for attorney's fees and expenses under Local Rule 54.3, and the defendants responded. Consistent with an agreement reached by the parties, the petition is now ripe for consideration.

## DISCUSSION

A successful FDCPA plaintiff is entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). A reasonable attorney's fee is "the number of hours

3

reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation, known as the "lodestar," may then be adjusted upward or downward, depending on a variety of factors. *Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 780 (N.D. Ill. 1994). The plaintiff bears the burden of proving both that the hourly rates requested are reasonable and that the hours claimed to have been worked were reasonably expended on the litigation. *Hensley*, 461 U.S. at 433. And, although Courts have broad discretion in fixing the amount of the award, to the extent they deviate from the petitioner's claimed rates and hours, they must explain those deviations. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir. 1993).

Mr. Shula unquestionably prevailed in this case; indeed, the defendants do not argue otherwise. The parties disagree, however, on how much money Mr. Shula should be entitled to recover, given his status as a prevailing party. Mr. Shula seeks an award of attorney's fees in the amount of $57,790.00; he seeks to recover 15.3 hours for attorney James Shedden, billed at the rate of $475/hour, 166.7 hours for attorney Michael Hilicki, billed at the rate of $300/hour, and 4.1 hours for law clerk Valerie Walker, billed at the rate of $125/hour. He also seeks reimbursement from the defendants for expenses totaling $3,358.61. Thus, in total, Mr. Shula seeks an award of fees and

costs in the amount of $61,148.61.

The defendants argue that the hourly rates urged by Mr. Shula are too high. They also argue that the total time submitted by Mr. Shula's counsel is excessive, that many of the hours worked were unnecessary, and that the time totals are not adequately documented. They claim that, at most, Mr. Shula is entitled to an award of $15,423.75, though they do not explain how they arrived at this number.

The Court first considers the reasonable hourly rates for the attorneys and the law clerk who worked on Mr. Shula's case. In determining the reasonable hourly rate to be used in calculating the lodestar, the Court looks to the market rate, the "rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *McNabola*, 10 F.3d at 519 (citations and quotations omitted). Awarding fees at the market rate helps to ensure that attorneys will take on fee-shifting cases, rather than selling their time to someone else at a higher rate. *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995). The burden of establishing the market rate is on the fee applicant; once he meets this burden, the opposing party then has the burden of demonstrating why a lower rate should be awarded. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-55 (7th Cir. 1999). If the fee applicant fails to establish the market rate, and if

5

the Court is unable to determine the actual billing rates of the attorneys involved in the case, the Court should look to the next best evidence – affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work, or evidence of fee awards the attorney has received in similar cases. *See People Who Care v. Rockford Board of Education, School District No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996); *Spegon*, 175 F.3d at 556. An attorney's self-serving affidavit cannot, by itself, establish the market rate for that attorney's services. *Spegon*, 175 F.3d at 556.

Here, Mr. Shula seeks reimbursement for fees at the rates of $475 for attorney Shedden, $300 for attorney Hilicki, and $125 for law clerk Walker. To support his proposed award, Mr. Shula submitted a declaration from Mr. Shedden stating: (1) that he has been an attorney since 1982 and a shareholder at Beeler, Schad & Diamond, his current firm, since 1991; (2) that he has litigated well over a hundred cases under the FDCPA; (3) that his hourly rate was, until June of 2003, $475 for both contingent fee and non-contingent fee work; (4) that in June of 2003, his hourly rate increased to $525, a rate he has been paid in at least one other case in this district, *Sharif v. International Development Group Co.*, No. 02 C 5430. *See* Declaration of James Shedden, ¶¶3, 7-8 (attached to Plaintiff's Petition as Exhibit D). With respect to attorney Hilicki, who also worked on Mr. Shula's case,

6

Mr. Shedden states: (1) that Mr. Hilicki, who became a lawyer in 1994, is a senior associate at Beeler, Schad & Diamond; (2) that he has worked on over one hundred FDCPA cases; (3) that his hourly rate was, until June of 2003, $300; and (4) that, in June of 2003, his hourly rate went up to $350. *See id.*, ¶¶5, 7-8.

In addition to Mr. Shedden's declaration, Mr. Shula submitted affidavits from two attorneys who were not involved in this case, but who handle FDCPA cases in the Chicago area. The first, David Philipps, states that he has been a lawyer since 1987, that he has been practicing law in the Chicago area for fifteen years, and that he specializes in consumer protection and fair debt collection practices cases; he states that his hourly rate for such cases is $300, and that he typically charges clients $250 per hour for work done by his associate. *See* Affidavit of David J. Philipps, ¶¶2, 4-6 (attached to Plaintiff's Petition as Exhibit H). Mr. Philipps also states that, in his view, and given his experience litigating FDCPA cases - and especially FDCPA cases against J.V.D.B. - the rates Mr. Shula requests are imminently reasonable. *See id.* ¶¶7-9. The second attorney, Christopher Langone, who, like Mr. Philipps, practices in the areas of consumer protection and fair debt collection practices, similarly stated in his affidavit that the rates Mr. Shula requests are reasonable. *See* Affidavit of Christopher V. Langone, ¶¶6-7 (attached to Plaintiff's Petition as Exhibit I).

7

Mr. Langone further states in his affidavit that he has been a lawyer since 1992, that he concentrates his practice in the areas of consumer rights and unfair business practices, and that he typically charges clients $320 per hour for his work in these types of cases. *Id.*, ¶¶1-3, 5.

For their part, the defendants cite *Mitchell v. Allied Interstate, Inc.*, No. 97 C 7177, 1999 WL 1100961 (N.D. Ill. Dec. 2, 1999), a class action FDCPA case in which Beeler, Schad & Diamond claimed hourly rates of just $240 for a shareholder and just $160 for a mid-level associate - roughly half the rates being sought in this case. According to the defendants, the fact that the firm's rates have almost doubled in a period of less than five years suggests that the rates sought here are unreasonable. The defendants suggest that the reasonable rate for both attorneys involved in this case is $225 per hour.

After considering all of this, the Court finds that Mr. Shula has failed to satisfy his initial burden of proving the market rate for the attorneys and the law clerk who worked on his case. With respect to the latter, Mr. Shula submitted nothing, no affidavit or other evidence, suggesting that $125/hour is the going rate for services such as those provided by Ms. Walker here. Similarly, the Court is unwilling to award fees at the rates suggested in Mr. Shedden's declaration based solely on his self-serving representations that the rates are reasonable and

that his firm received those rates in other cases, including a
case in this district, *Sharif v. International Development Group.*
Mr. Shedden provided no documentation showing that he actually
received the claimed rate in that case, and, more importantly, he
has said nothing about whether *Sharif* involved the same types of
claims or the same types of services involved in this case; in
fact, it appears that *Sharif* involved a multi-million dollar
contract claim against a foreign defendant, *see Brief for
Appellant* at 12, *Sharif v. Int'l Develop. Group*, No. 03-3814,
2003 WL 23340166 (7th Cir. 2003), arguably a much more complex
case than this one.

The affidavits of attorneys Philipps and Langone do little
to help Mr. Shula's cause: the fact that these attorneys charge
considerably less than Mr. Shedden for the same type of work
certainly undercuts their claim that Mr. Shedden's rates are
reasonable. Although Mr. Shedden has more experience than Mr.
Philipps and Mr. Langone, he has not demonstrated that his
experience merits an extra $150 to $175 per hour. And attorney
Hilicki actually has less experience than both attorneys, which
suggests that his hourly rate should reasonably be expected to be
lower than their rates.

Based on prior awards in FDCPA cases and based on its own
experience, the Court finds that the reasonable hourly rate for
James Shedden is $350, the reasonable hourly rate for Michael

9

Hilicki is $225, and the reasonable hourly rate for Valerie Walker is $100.

The Court next considers whether the number of hours claimed in Mr. Shula's Petition is reasonable. As a general rule, "hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority." *Hensley,* 461 U.S. at 434 (emphasis in original). The party seeking the fee award bears the burden of proving the reasonableness of the hours worked, and the Court should exclude from the fee request any hours that are excessive, redundant, or otherwise unnecessary to the litigation. *Spegon*, 175 F.3d at 550, 552. The Court may also exclude hours that are inadequately documented if the lack of documentation prevents the Court from gauging reasonableness. *See Hensley*, 461 U.S. at 433; *People Who Care*, 90 F.3d at 1314. Any exclusions or reductions should be explained, however. *People Who Care*, 90 F.3d at 1314.

Here, Mr. Shula seeks reimbursement for 15.3 hours for Mr. Shedden, 166.7 hours for Mr. Hilicki, and 4.1 hours for Ms. Walker. The defendants argue that the majority of these hours were excessive, duplicative, and unnecessary to the litigation. The Court will consider the question of reasonableness by looking at the litigation in six separate stages: stage one, from September 21, 2000 through January 9, 2002, involved the initial investigation into Mr. Shula's claims, the filing of the

10

complaint and amended complaints, and the first efforts at settlement with the defendants; stage two, from January 15, 2002 through July 5, 2002, involved discovery efforts; stage three, from July 12, 2002 through January 29, 2003, involved the summary judgment proceedings; stage four, from approximately February 17, 2003 through August 13, 2003, involved negotiating a final resolution of the remaining claims; stage five, which began in late July of 2003 and ended on September 27, 2003, involved litigation over fees; and stage six, running from September 2, 2003 through September 27, 2003, involved proceedings on appeal.

For stage one, Mr. Shula seeks to recover 3.3 hours for James Shedden, 10 hours for Michael Hilicki, and 4.1 hours for Valerie Walker. With respect to these hours, the defendants launch a three-fold attack. They first argue that attorneys Shedden and Hilicki spent an unreasonable amount of time communicating with David Gorodess, who was the initial defendant in the case and who was later dismissed. The Court agrees. On August 2, 2001, Mr. Hilicki obtained an affidavit from Mr. Gorodess stating that he did not write or authorize the court costs letter to Mr. Shula. On August 28, 2001, Mr. Hilicki began amending the complaint to include J.V.D.B. & Associates, Inc., as a defendant. Yet, despite having an affidavit showing no involvement by Mr. Gorodess, and despite having identified the correct defendant, Mr. Hilicki spent an additional 3.2 hours, and

Mr. Shedden spent an additional 1.2 hours, trying to communicate with, and serve process upon Mr. Gorodess. Those hours were unnecessary, and the Court, therefore, declines to impose upon the defendants the obligation to pay these fees.

The defendants next argue, with respect to stage one, that the attorneys spent too much time drafting the complaint and the amended complaints. As to the initial complaint, the Court agrees. In total, the attorneys seek 4.5 hours for the initial complaint (4 hours for Ms. Walker, and .5 hours for Mr. Shedden). The complaint was not complex, and Beeler, Schad & Diamond presumably had an ample store of forms at its disposal to aid in this task. The Court will, therefore, reduce Ms. Walker's time on this task by 2.5 hours, but otherwise allow the fees as requested, including the 1.3 hours requested for time spent by Mr. Hilicki to draft the amended complaint.

Finally, with respect to time billed during stage one, the defendants argue that they should not have to pay for certain conferences between attorney Shedden and attorney Hilicki, that it is unreasonable for both attorneys to bill their time for these conferences. Here, the Court cannot agree. Although the tendency of law firms to overstaff a case should cause the court to scrutinize a fee petition carefully for excessive time, *see Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989), reasonable consultation among lawyers also ensures that

12

they do not overlook significant facts or inquiries, *Bohen v. City of East Chicago*, 666 F. Supp. 154, 157 (N.D. Ind. 1987). Here, Messrs. Shedden and Hilicki met for .3 hours during the initial stage of the litigation. This is hardly excessive.

For stage two, Mr. Shula seeks fees for 46.8 hours for Mr. Hilicki, and 4.6 hours for Mr. Shedden. Defendants object to many of these hours in general as being excessive and duplicative.[1] On a couple of points, the Court agrees. First, the attorneys spent too much time drafting the second amended complaint – Mr. Hilicki spent 4.4 hours planning, researching, and drafting the second amended complaint, plus another 2.3 hours drafting the motion to amend the complaint, and Mr. Shedden billed another 2.4 hours related to these same tasks. The Court recognizes that the second amended complaint was more complicated than the first – it added Ms. Bugno and Mr. Lawent as defendants, and added new claims. But attorneys with Messrs. Shedden's and Hilicki's expertise in this area of the law should have been able to accomplish the tasks involved in less time. Accordingly, the

---

[1] Defendants also claim that certain hours devoted to discovery of information related to the claim against Denise Bugno should be excluded, since that claim was dismissed with prejudice. The Court will postpone considering whether a reduction is warranted on the basis of time devoted to unsuccessful claims until after the initial lodestar calculation is completed. *See Spellan v. Board of Education for District 111*, 59 F.3d 642, 647 (7th Cir. 1995) (district court should not "engage in double-counting" with respect to reductions based on *Hensley* factors).

Court will reduce Mr. Hilicki's time by 3.0 and Mr. Shedden's hours by 1.0.

Counsel also spent too much time drafting, and preparing to argue, a two-page motion to compel; on this task, Mr. Hilicki billed 2.3 hours, and Mr. Shedden billed another .2 hours. The Court will reduce Mr. Hilicki's time by one hour. Counsel also spent too much time preparing for depositions. From May 27 to June 26, 2002, Mr. Hilicki spent 5.3 hours preparing for the deposition of Paul Lawent and 4.6 hours preparing for the depositions of Denise Bugno and John Vanko.[2] Given that Mr. Hilicki has litigated over a hundred FDCPA cases, the Court finds that he reasonably should have spent just three hours preparing for Mr. Lawent's deposition, and a total of just three hours preparing for the other two. Thus, the Court will shave 3.9 hours off the bill.

The Court further reduces the number of hours worked to eliminate time not adequately documented, and to correct arithmetical errors. For example, on February 22, 2002, Mr. Hilicki spent 2.2 hours analyzing the case file and strategizing, as well as on drafting a plan for the case; yet, the draft plan

---

[2] Defendants claim that hours spent actually deposing Mr. Lawent, Ms. Bugno, and Mr. Vanko should also be reduced, arguing that they were unnecessary to the litigation. However, the Court relied on all three depositions in its opinion on summary judgment and finds that the depositions were necessary to the litigation.

was not included, and the Court has no way of determining whether this time was reasonably expended. Additionally, the billing entries from February 25, 2002 and May 29, 2002 are simply incorrect, over by .7 hours for work done by Mr. Hilicki.

At stage three of the litigation, which spanned July 12, 2002 to January 29, 2003 and involved summary judgment proceedings, Mr. Shula seeks reimbursement for 73.9 hours for Mr. Hilicki and for 5.7 hours for Mr. Shedden. Most of this time is well-documented and reasonable. There are, however, a couple of exceptions. First, in the first part of September 2002, Mr. Hilicki spent 1.1 hours trying to obtain an extension to the briefing deadlines for summary judgment. Because the fee petition says nothing about whether the firm had to seek the extension because of something that could properly be charged to the client, the Court will not charge this time to the defendants. Second, the Court finds that the number of hours submitted by Mr. Hilicki is somewhat excessive. Although counsel's submissions to the Court included two well-drafted, fairly lengthy memoranda, a Local Rule 56.1(b) statement of facts, and an appendix of exhibits, the facts of the case were relatively simple (the statement of facts contains only 28 responses to the Defendants' facts and 26 counterstatements of fact from Mr. Shula), and many of the legal issues were researched during earlier stages of the litigation. Spending

almost seventy hours on this task is simply too much.  *See Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 781-82 (N.D. Ill. 1994) (finding that only 16 hours were reasonably spent on summary judgment in a single-plaintiff FDCPA case).  The Court will reduce Mr. Hilicki's time by 25 hours in this regard, still a generous allowance by any measure.

For stage four of the litigation, Mr. Shula seeks to recover fees for 10.7 hours for Mr. Hilicki - hours spent writing letters, conducting teleconferences with the defendants, and appearing in court on various matters - and for the .8 hours Mr. Shedden spent reviewing settlement proposals.  The defendants argue that they should not have to pay for the time Mr. Hilicki spent on the motion to amend the Court's judgment or for any court appearances on that motion, because that work was necessitated by a mistake made by the Court, and was not at all caused by the defendants' conduct.  Because this time would properly be charged to a client, it may be charged to the defendants.  Nevertheless, the Court will disallow 1.1 hours claimed by Mr. Hilicki for research on whether the FDCPA's statutory damages award of $1,000 is available per proceeding or per defendant; having litigated over a hundred FDCPA cases, he should have known what damages the law allowed his client to recover without having to research the issue at his client's expense.

For stage five of the litigation, which was related to the fee issue, Mr. Shula seeks to recover fees comprised of 15.7 hours for Mr. Hilicki and .9 hours for Mr. Shedden. The defendants argue that many of the specific time entries related to the fee petition were excessive. And the Court finds several instances where Mr. Hilicki spent too much time on particular tasks. First, Mr. Hilicki spent 4.4 hours preparing his disclosure materials for the defendants, not counting his work preparing supporting affidavits; because this task involved little more than sending a bill, the Court will allow just 2.0 hours from his claimed time. Second, the Court subtracts .5 hours for an entry on September 9, 2003, for research on an issue that a seasoned FDCPA attorney like Mr. Hilicki should have known already: whether a fee applicant can seek fees for preparing fee materials. Third, Mr. Hilicki spent 2.4 hours between September 17 and September 22 on a motion that was apparently never filed, but which, in any event, should not have taken so long to prepare; the Court will allow just one hour for this task.

Stage six of the litigation involved the appeal; here, Mr. Shula claims 9.6 hours for work performed by Mr. Hilicki. The defendants' objections notwithstanding, the Court finds that the time Mr. Hilicki spent on matters relating to the appeal was both reasonable and necessary.

In sum, the Court finds that Mr. Shula is entitled to an

award of attorney's fees in the amount of $32,015.00. This
amount includes: for Mr. Shedden, 13.1 hours at the rate of $350
per hour, for a total of $4,585.00; for Mr. Hilicki, 121.1 hours
at the rate of $225 per hour, for a total of $27,270.00; and for
Ms. Walker, 1.6 hours at the rate of $100 per hour, for a total
of $160.00.

Having now determined the lodestar, the Court next considers
whether that amount should be adjusted upward or downward.
*Hensley*, 461 U.S. at 434. On this score, the Court considers a
number of factors, including, most importantly, the degree of
success obtained by the prevailing party.[3]   *Id.*   Mr. Shula does
not argue that the lodestar amount should be enhanced, and so the
Court need not consider adjusting the figure upward. But the
defendants do argue that the lodestar amount should be adjusted
downward. They argue that the level of success Mr. Shula
obtained here – an award of $1200 – cannot justify more than a

---

[3] The 12 factors are (1) the time and labor required; (2) the
novelty and difficulty of the questions; (3) the skill requisite
to perform the legal service properly; (4) the preclusion of
employment by the attorney due to acceptance of the case; (5) the
customary fee; (6) whether the fee is fixed or contingent; (7)
time limitations imposed by the client or the circumstances; (8)
the amount involved and the results obtained; (9) the experience,
reputation, and ability of the attorneys; (10) the
"undesireability" of the case; (11) the nature and length of the
professional relationship with the client; and (12) awards in
similar cases. *Hensley*, 461 U.S. at 430. However, many of these
factors are subsumed within the initial calculation of hours
reasonably expended at a reasonable hourly rate, and should not
be considered a second time when modifying the lodestar amount.
*Spellan*, 59 F.3d at 647 (citing *Hensley*, 461 U.S. at 434 n.9).

hundred hours of attorney time.  But success is not measured solely by the damages award; here, Mr. Shula also had his rights vindicated.  Moreover, Mr. Shula attempted to settle with J.V.D.B. as early as November 7, 2001, and it was the defendants' refusal that prolonged this case – that is particularly troubling in light of the fact that the FDCPA violations were, as the Seventh Circuit pointed out, blatant.  The Court will award the full lodestar amount, $32,015.00, as determined above.

Finally, the Court turns to the question of expenses.  Mr. Shula seeks reimbursement of $3,358.61 in expenses.  This amount consists of a $150.00 filing fee, $1,064.20 in photocopying expenses, $142.56 in fax charges, $39.65 in postage charges, $1.43 in long distance telephone charges, $102.02 in computerized legal research charges, $254.75 for legal document management and copying charges (including service of process), and $1,604.00 for costs incurred in connection with depositions.  The defendants argue that none of these expenses is adequately documented, and that they should all be disallowed.  With the exception of the filing fee, the Court must agree.

A district court has broad discretion in determining the appropriate expenses and costs to be awarded. *See Haroco, Inc. v. American National Bank and Trust Company of Chicago*, 38 F.3d 1429, 1439 (7th Cir. 1994).  The court may award costs that are reasonable in amount and necessary to the litigation, *Harkins v.*

*Riverboat Services, Inc.*, 286 F. Supp. 2d 976, 979 (N.D. Ill. 2003), and may reduce or deny reimbursement for any expenses that are inadequately documented. *See Altergott*, 864 F. Supp. at 783. Unfortunately for Mr. Shula, that is largely the case here. With respect to the copying charges, for example, neither Mr. Shula nor counsel provided any documentation that would allow the Court to determine the per page rate being charged. The monthly charges for June of 2001 were $17.80, which seems reasonable. But if counsel copied just ten pages, the per page rate would be $1.78 - clearly excessive. The same analysis would apply for the telephone charges and the postage charges included in counsel's bills. Nor does counsel provide the Court with the means to assess the reasonableness of the charges incurred in connection with depositions. The Court would need to know, for example, how many pages the deposition transcripts were, and whether the charges include fees for expedited delivery, or special form transcripts, etc. Presumably counsel received invoices from the court reporting agencies, yet they chose not to include them with Mr. Shula's fee petition. So too with the charges for service of process and document management. Without those invoices - or some other documentation demonstrating the reasonableness of the charges incurred - the Court is unwilling to impose the charges on the defendants. The Court will, therefore, disallow all but $150.00 of the requested expenses. In so doing, the Court is in

no way suggesting that counsel for Mr. Shula did not spend the amounts claimed for depositions, photocopying, etc. But without adequate documentation, the Court simply has no way of gauging the reasonableness of those charges.

## CONCLUSION

For the reasons stated above, the Court grants James Shula's Petition for Attorney's Fees and Expenses, as modified in this opinion. Mr. Shula is entitled to recover attorney's fees in the amount of $32,015.00, and expenses in the amount of $150.00, from the Defendants, for a total award of $32,165.00.

Dated: June 4, 2004

ENTER:

ARLANDER KEYS
United States Magistrate Judge